# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES F. CAMPENELLA CONSTRUCTION CO., INC., et al., | : : : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : : | |
| GREAT AMERICAN INSURANCE COMPANY OF NEW YORK, | : : : | NO. 10-681 |
| Defendant. | : | |

## MEMORANDUM

**Baylson, J.**                                                                              **November 24, 2010**

This action arises out of a contractual dispute respecting an insurance policy Defendant Great American Insurance Company of New York ("Defendant") issued to Plaintiffs James F. Campenella Construction Co., Inc. ("Campenella") and W.U. Locust Partners, L.P. ("W.U. Locust," collectively with Campenella, "Plaintiffs"). Following a bench trial on the issue of coverage, the Court will deny Defendant's request for declaratory judgment on the "hard-cost" claims, grant Defendant's request for declaratory judgment on the "soft-cost" claims,[1] and order that the parties submit their dispute regarding the hard-cost claims, excluding any costs related to project delay, to appraisal pursuant to the terms of the insurance policy.

## I.     Background and Procedural History

### A.     Background

---

[1] The parties define "hard costs" as those costs resulting from building damage. (See ECF Nos. 26, 41.) "Soft costs" are "actual and necessary costs in excess of [Plaintiffs'] actual and anticipated amount for the 'project,'" and consist of interest on money borrowed to finance construction, advertising and promotional expenses, realty taxes and other assessments, and architectural or engineering supervisory or consulting fees. (Def. Ex. 1 at CF5069, 5073.)

Defendant issued Plaintiffs a Builder's Risk Plus Renovation Project insurance policy, number IMP 640926600, for a commercial property at 1103-13 Locust Street in Philadelphia, Pennsylvania. (Def. Ex. 1.) W.U. Locust owns the property, and Campenella is the general contractor hired to perform construction and renovations. The scope of the project included renovations to the existing four-story structure and construction of seven additional floors, with the intention of building approximately one hundred condominium units and a Walgreens at street-level. Construction began in April 2006 and was substantially completed in October 2010.

The policy provides coverage for a direct "loss" to the "Covered Property" from any "Covered Causes of Loss." (Def. Ex. 1 at CF5074.) The policy defines "loss" as "accidental loss or damage," and it defines "covered causes of loss" as "risks of direct physical 'loss' to Covered Property except those causes of 'loss' listed in the Exclusions." (Def. Ex. 1 at CF5074, 5080.) Excluded from coverage is any loss "caused by or resulting from . . . [d]elay, loss of use, loss of market or any other consequential loss." (Def. Ex. 1 at CF5077.)

On October 23, 2007, a water-supply line on the building's third floor failed causing water damage to the building's first three floors. Plaintiffs performed repairs between October 23, 2007 and December 25, 2007. Plaintiffs applied for coverage under the insurance policy. Defendant hired a consultant, J.S. Held, Inc., to estimate the damages. In July 2008, J.S. Held estimated damages totaling $505,886.07 (Def. Ex. 3), which Defendant paid to Plaintiffs, less the policy's $10,000 deductible. Defendant later paid an additional $1,000 for Plaintiffs' time spent preparing their claim.

In August 2008, Plaintiffs filed a sworn statement in proof of loss claiming damages in excess of $900,000, which they revised down to $888,117.47. (Def. Ex. 4; Pls. Exs. 5-7.) Thus,

Plaintiffs claim an additional $381,231.40 in unpaid hard-cost claims. Then, in October 2008, Plaintiffs submitted soft-cost claims under the policy's Time Element Coverage Supplemental Declarations totaling $912,820.83. (Def. Ex. 11.) Pursuant to the policy, Defendant is obligated to pay certain soft costs during the "period of delay in completion" of the project, including interest on money borrowed to finance construction; advertising and promotional expenses; realty taxes and other assessments; and architectural or engineering supervisory or consulting fees. (Def. Ex. 1 at CF5069-70.)

Defendant denied coverage for the remainder of the hard-cost claims and all of the soft-cost claims. Because Defendant refused to pay any additional amounts, Plaintiffs sought to compel appraisal under the terms of the policy, which provides in relevant part, "If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss." (Def. Ex. 1 at CF5065.)

**B.    Procedural History**

On January 29, 2010, Plaintiffs filed a complaint against Defendant in the Philadelphia Court of Common Pleas. (ECF No. 1.) Defendant removed the action to this Court on February 18, 2010.[2] (ECF No. 1.) On May 21, 2010, the Court dismissed Plaintiffs' bad faith claims. (ECF Nos. 9, 10.) Thereafter, Plaintiffs amended their complaint to (1) compel appraisal pursuant to the terms of the insurance policy, and (2) for breach of contract arising from Defendant's failure to pay Plaintiffs' claims. (ECF No. 11, Ex. A.)

Defendant answered and asserted two counter-claims for declaratory relief. (ECF No.

---

[2] The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Venue is proper under 28 U.S.C. § 1441(a).

21.) Defendant asked the Court to declare that (1) it has paid all covered hard costs and is not liable to Plaintiffs for any additional hard-cost claims, and (2) it is not liable to Plaintiffs for any claimed soft costs.[3]  (ECF No. 21 at 13, 16-17.)  The Court then denied a flurry of motions and cross-motions to dismiss and for summary judgment, concluding factual disputes existed regarding coverage under the policy.[4]  (ECF No. 44.)

On November 10, 2010, the Court held a bench trial on Defendant's counter-claims. Defendant presented testimony from one of its representatives, Gail Salafia, regarding the scope of coverage under the policy and the progression of Plaintiffs' claim process.  Defendant then presented testimony from Douglas MacKinney, the individual who prepared J.S. Held's estimate for Defendant.  Notably, Mr. MacKinney had previously agreed to purchase one of the units in the insured building in September 2006, completed the sale in February 2008, and began occupying the unit in June 2008.  Finally, Defendant offered testimony from Plaintiffs' public adjuster, Leonard Orloff, who testified regarding his efforts to estimate the damages and obtain additional payments from Defendant.  Plaintiffs called no witnesses, but introduced several exhibits including the invoices submitted with their sworn statement in proof of loss and

---

[3] Plaintiffs never answered Defendant's counter-claims, despite counsel's representation at trial that he would do so.

[4] The Court declined to send the matter to appraisal because, under Pennsylvania law, the insurer must first admit or be found liable under the policy before a dispute as to the amount of loss is submitted to appraisal.  See Ice City, Inc. v. Ins. Co. of N. Am., 314 A.2d 236, 240 (Pa. 1974).  The Court agreed to submit the matter to appraisal in the event it found Plaintiffs' losses are covered.  (ECF No. 44 ¶ 4.)

Shortly before trial, Plaintiffs filed a Motion for Leave to File a Second Motion for Partial Summary Judgment (ECF No. 49), again asking the Court to submit the matter to appraisal. Because Pennsylvania law requires an admission or finding of liability before a court compels appraisal, and the Court is prepared to determine Defendant's liability, Plaintiffs' Motion will be denied as moot.

summaries of their claimed losses.

After trial, the parties filed supplemental letter briefs. Defendant argues that Plaintiffs failed to meet their burden of establishing coverage for hard-cost claims above and beyond the amounts it has already paid. (ECF No. 55.) Defendant also contends that Plaintiffs failed to show that their claimed soft costs are covered because they failed to show a delay and, even if covered, are excluded. (ECF No. 55.) Plaintiffs, on the other hand, argue soft-cost coverage exists and that the hard-cost dispute focuses exclusively on amount of loss. (ECF Nos. 56, 57.)

## II.  Issues

The bench trial principally concerned two issues: whether certain claimed damages are losses covered under the policy and, if so, whether some of the claimed losses are nevertheless excluded from coverage. In particular, Defendant contends that Plaintiffs' hard-cost claims are not covered for four reasons: (1) Plaintiffs seek reimbursement for work done in areas not damaged by the water or for repairs to work not completed prior to October 23, 2007; (2) Defendant already paid some claimed costs, including payment for a designated elevator operator and for supervision of repairs; (3) the claim for supervision costs cites the provision for "loss data preparation," which is capped at $1,000 (which Defendant paid); and (4) the majority of the claims for "general conditions"[5] is not directly related to the water incident and, therefore, such claims are not covered or are otherwise excluded. Defendant also disputes Plaintiffs' request for soft costs because (1) Plaintiffs did not establish a planned completion date, thereby precluding

---

[5]  The policy does not define or extend coverage to claims for "general conditions." Plaintiffs borrowed this term from their overall construction budget, which includes a line-item for "general conditions." (ECF No. 56, Ex. 1.) This line-item refers to items necessary for the job to proceed other than labor and materials, such as dumpsters, fencing, and safety signs. (ECF No. 56, Ex. 2.).

determination of the "period of delay in completion" and calculation of the total costs; (2) Plaintiffs' repeated claim for general conditions are not covered soft costs; and (3) Plaintiffs' claimed losses were caused in part by a lack of work force, which is an enumerated exclusion in the policy's anti-concurrent clause.[6]

## III.   Legal Standards

Where federal jurisdiction is based on diversity, as it is here, district courts should apply the choice-of-law rule of the state in which it sits. Canal Ins. Co. v. Underwriters at Lloyd's London, 435 F.3d 431, 434 (3d Cir. 2006). Under Pennsylvania choice-of-law rules, an insurance contract is governed by the law of the state in which the contract was made, and insurance contracts are made in the state in which the last act legally necessary to bring the contract into force takes place. Id. In this case, the parties have relied on Pennsylvania law in arguments to the Court, the insurance policy at issue contains special Pennsylvania provisions, and the parties have not contended any other state's law controls.

Under Pennsylvania law, an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage. State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (applying Pennsylvania law); see Miller v.

---

[6]   An anti-concurrent clause excludes coverage for a covered loss if the loss was caused in any way by an enumerated exception. See T.H.E. Ins. Co. v. Charles Boyer Children's Trust, 455 F. Supp. 2d 284, 294 (M.D. Pa. 2006), aff'd 269 F. App'x 220, 222-23 (3d Cir. 2008). The effect of such a clause depends on the application of an enumerated exception – if the exclusion applies coverage is denied. Id. at 298. It is irrelevant that a covered risk may have contributed to the loss because the language of the anti-concurrent clause excludes any loss directly or indirectly caused by the enumerated exception. Id.; see Spece v. Erie Ins. Grp., 850 A.2d 679, 684 (Pa. Super Ct. 2004) (concluding anti-concurrent clause means that "if an exception, in its entirety, applies then the loss is excluded, even if other events contributed to the loss"). Although Pennsylvania courts disfavor these clauses, they are nevertheless valid and enforceable. Bishops, Inc. v. Penn Nat'l Ins., 984 A.2d 982, 993-94 (Pa. Super. Ct. 2009).

Boston Ins. Co., 218 A.2d 275, 277 (Pa. 1966) (stating insured bears initial burden to show claim falls within coverage). If the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage. Estate of Mehlman, 589 F.3d at 111; see Bishops, Inc. v. Penn Nat'l Ins., 984 A.2d 982, 991 (Pa. Super. Ct. 2009) (asserting insurer bears burden of proving exclusion provision applies). Therefore, Plaintiffs bear the burden to make a prima facie showing that their claims are covered losses, and Defendant bears the burden to show an exclusion applies.

Because there are coverage disputes in this case, the Court must interpret the insurance contract. The interpretation of an insurance policy is a question of law. Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006); see Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170, 1175 (Pa. 2006) (stating that whether coverage exists is generally issue of interpretation for court). Insurance policies are contracts, and the rules of contract interpretation provide that the mutual intention of the parties at the time they formed the contract governs its interpretation. Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 540 (Pa. 2010). Intent is to be inferred from the written provisions of the contract. Id.

When the language is clear and unambiguous, the Court must give effect to the language. Kvaerner, 908 A.2d at 897. But when the provisions are ambiguous, the Court must construe the policy liberally in favor of coverage and strictly against exclusion. Slate Constr. Co. v. Bituminous Cas. Corp., 323 A.2d 141, 143-44 (Pa. Super. Ct. 1974). Ambiguity exists if the language is reasonably susceptible of different constructions and capable of being understood in more than one sense. Egger v. Gulf Ins. Co., 903 A.2d 1219, 1226 (Pa. 2006). In determining the parties' intent, the Court must look at what they clearly expressed – it should not assume the

language was carefully chosen. 401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 171 (Pa. 2005). In contrast, an exclusion from liability must be clear and exact to be given effect. See Sartno, 903 A.2d at 1177 (noting exclusion provisions are contract terms subject to rules of contract interpretation). If the exclusion is clear and unambiguous, the insurer bears no additional burden to ensure the insured understands the exclusion. Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 567 (Pa. 1983).

## IV. Findings and Conclusions

### A. Hard-Cost Claims

Defendant has already paid more than $500,000 to Plaintiffs for damages to their building. Plaintiffs, however, seek an additional $381,231.40. Because Defendant has already paid some of Plaintiffs' claims, the Court finds that it has implicitly admitted the water-supply line failure is a covered cause of loss and that the resulting damage is a loss under the policy. Moreover, the evidence at the hearing supported Plaintiffs' claim for hard-cost coverage unless excluded. In particular, Ms. Salafia testified that a loss occurred and that Defendant paid a portion of the claimed costs, and Mr. MacKinney testified to the damages sustained as a result of the loss. Therefore, Plaintiffs have satisfied their burden of establishing coverage exists. Having determined coverage exists, unless Defendant establishes an exclusion, the disputes noted above properly fall within the purview of an appraisal to determine the amount of loss sustained. See Ice City, Inc. v. Ins. Co. of N. Am., 314 A.2d 236, 240 (Pa. 1974).

The Court concludes that Defendant has met its burden of showing that Plaintiffs' purported "general conditions" claim is excluded under the clear and unambiguous terms of the policy. As noted, the policy covers a direct loss from any covered cause of loss, but excludes a

loss caused by, <u>inter alia</u>, delay.  Plaintiffs calculated this element of the claim by taking their budgeted general conditions for the entire construction project, approximately $2.1 million, dividing by a 540-day assumed construction schedule, and multiplying by the number of days for repair between October 23, 2007 and December 25, 2007.  These costs are associated with the construction project as a whole and, therefore, would have been incurred even in the absence of the loss event.  Thus, any additional general conditions costs incurred necessarily resulted from delay in construction to perform repairs.  Indeed, in their Proposed Findings of Fact, Plaintiffs label project delay as general conditions.  (ECF No. 50 ¶ 9.)  Defendant has established an exclusion for costs incurred due to delay; thus, Plaintiffs cannot recover for general conditions.

The Court will refer all other hard-cost disputes to appraisal, where the appraisers should determine the amount of the loss, excluding costs for delay, less the $505,886.07 already paid.

**B.     Soft-Cost Claims**

Plaintiffs' insurance policy includes supplemental "Time Element Coverage."  This portion of the policy pays for "soft costs" incurred during the "period of delay in completion," but "must result from 'loss' from a Covered Cause of Loss which delays the completion of the 'project' beyond the 'planned completion date.'"  (Def. Ex. 1 at CF5070.)  The "period of delay in completion" "begins with the 'planned completion date'" and "ends on the date when the 'project' should be completed."  (Def. Ex. 1 at CF5072-73.)  The "planned completion date" means "the date the 'project' would be put into operation or use in the normal course of construction if 'loss' . . . had not occurred."  (Def. Ex. 1 at CF5073.)  The "project" means "the total construction of all Covered Property at the jobsite or described in the Time Element Supplemental Declarations" (Def. Ex. 1 at CF5073), which in turn reference "[a]ll jobsites

described in the Builders Risk Plus Declarations" (Def. Ex. 1 at CF5069), which identify the existing structure at 1103-13 Locust Street in Philadelphia, Pennsylvania and the seven floors being added (Def. Ex. 1 at CF5068). Accordingly, the Court concludes that, under the clear and unambiguous terms of the policy, Plaintiffs can recover for soft costs only if they show that the water leak caused a delay in completion of the entire construction project, which consists of constructing approximately one hundred condominium units and a Walgreens at street level.

Plaintiffs failed to meet their burden of establishing coverage for their claimed soft costs. Plaintiffs presented no evidence that the water-supply line failure caused a "delay" in the "project." Testimony elicited at trial, some of which came from Mr. Orloff, who worked for Plaintiffs, identified several potential causes for the delay, including the recent general economic downturn, an inability to obtain financing which shut-down construction for one year, a change in the project's scheme from specification to customization, and the need to re-assign labor from construction to repairs. Plaintiffs introduced no evidence to show, and none of the evidence introduced by Defendant showed, that the two-month repair period delayed completion or had any effect whatsoever on the "total construction" of the project at 1103-13 Locust Street. Indeed, Plaintiffs completed repairs on December 25, 2007, almost three years before they completed the project in October 2010.

Alternatively, Defendant argues Plaintiffs' soft-cost claims are excluded because they were incurred, i.e. there was a delay, because of a "lack of work force." Based on the foregoing analysis, however, it is unnecessary to determine whether this exception in the policy's anti-concurrent clause excludes coverage. The evidence at trial was equivocal on this issue because Mr. MacKinney testified that during the repair period, construction continued in other areas of

the building.  But Mr. MacKinney and Mr. Orloff both testified that Campenella had to re-assign workers from construction to repairs because Campenella could not secure additional workers to perform the repairs.  To further complicate the issue, Mr. Orloff clarified that Campenella could not secure additional workers because unions declined to meet the request.  The Court has found no case, and the parties identify none, interpreting a "lack of work force" exclusion in an insurance policy to instruct the Court's analysis on whether the union's decision not to supply additional workers qualifies as a lack of work force under the policy.  See Spece v. Erie Ins. Grp., 850 A.2d 679, 684 (Pa. Super. Ct. 2004) (declining to enforce clause where listed exclusions are ambiguous).  Regardless, Plaintiffs did not carry their burden of showing coverage exists, so the Court need not determine whether Defendant established the exclusion.

V.      **Conclusion**

For the foregoing reasons, which constitute the Court's findings of fact and conclusions of law under Rule 52 of the Federal Rules of Civil Procedure, Defendant's request for declaratory judgment on the hard-cost claims is denied except with regard to costs related to delay, and is granted on the soft-cost claims.  The parties' remaining disputes regarding the hard-cost claims concern the amount of the loss and are referred to appraisal.  Plaintiffs' Motion for Leave to File a Second Motion for Partial Summary Judgment (ECF No. 49) is denied as moot.  An appropriate Order will follow.

O:\CIVIL 09-10\10-681 Campanella v. Great American\Campenella - Memo post trial.wpd